IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CURTIS NIXON,<br><br>                    Plaintiff,<br><br>        v.<br><br>AMIE RUTTER, TAMIKA SCOTT, HANNAH SCHELL, ST. FRANCIS HOSPITAL, ST. FRANCIS HOSPITAL TRANSPORT CO., a/k/a ST. FRANCIS HOSPITAL AMBULANCE CO., THE CITY OF WILMINGTON, and CORPORAL JEFFERY DICKERSON,<br><br>                    Defendants. | C.A. No. 23-627-JLH |

## MEMORANDUM ORDER

Pending before the Court are two motions to dismiss Plaintiff's Complaint. (D.I. 9, 12.) The motions were filed and fully briefed before the case was re-assigned to me. Having reviewed the Complaint (D.I. 1), the parties' briefs (D.I. 10, 11, 17, 18, 23, 24), and the applicable law, the Court concludes that the Complaint fails to plausibly allege a federal claim. The Court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the Complaint will be dismissed.

Read in the light most favorable to Plaintiff,[1] the Complaint and documents incorporated by reference allege the following. On September 24, 2022,[2] Plaintiff Curtis Nixon called 911 because his mother presented symptoms of an impending serious medical condition. (D.I. 1 ("Compl.") ¶ 21.) Defendants Amie Rutter, Tamika Scott, and Hannah Schell (collectively, the "EMTs") are emergency medical technicians employed by Defendants St. Francis Hospital and St. Francis Hospital Transport Co. (*Id.* ¶¶ 2–12.) The EMTs were dispatched to Plaintiff's home and, upon arrival, began to examine Plaintiff's mother. (*Id.* ¶¶ 23–24.) Plaintiff allowed the EMTs to examine Plaintiff's mother, briefly went upstairs to investigate a sound, and then returned to the EMTs a short time later. (*Id.* ¶¶ 24–26.) The EMTs assisted Plaintiff's mother into an ambulance and took her to Wilmington Hospital. (*Id.* ¶¶ 28–29.)

Subsequently, the EMTs informed their supervisor that Plaintiff had "brandished" a firearm "and menaced them, placing them in fear of imminent bodily injury." (*Id.* ¶ 29.) The EMTs called the police, and Defendant Corporal Jeffrey Dickerson was dispatched to investigate the allegations. (*Id.* ¶¶ 30, 32.) The EMTs told Cpl. Dickerson that, while they were at Plaintiff's house, Plaintiff's mother was answering questions appropriately and did not want to be taken to the hospital. (*Id.*

---

[1] A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A possibility of relief is not enough. *Id.* In determining the sufficiency of the complaint under the plausibility standard, the court must "disregard[] a pleading's legal conclusions," then "assume all remaining factual allegations to be true, construe those truths in the light most favorable to the Plaintiff, and then draw all reasonable inferences from them." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citing *Foglia v. Renal Ventures Mgmt., L.L.C.*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).

[2] The Complaint identifies the date as September 9, 2022, but no one disputes that the events in question occurred on September 24, 2022. (D.I. 11, A-3, A-5, A-11.)

¶¶ 34–38; D.I. 11, A-2, A-11, A-13, A-14.)  The EMTs told Cpl. Dickerson that they informed Plaintiff they could not transport his mother to the hospital, which upset Plaintiff.  (*Id*.)  The EMTs told Cpl. Dickerson that Plaintiff subsequently went upstairs and returned with a black firearm visible in his waistband.  (*Id*.)  The EMTs told Cpl. Dickerson that Plaintiff then demanded that they transport his mother to the hospital.  (*Id*.)  The EMTs stated to Cpl. Dickerson that they were in fear for their own safety and the safety of Plaintiff's mother because of Plaintiff's menacing conduct involving the firearm and his demand that his mother be transported to the hospital.  (*Id*.)  They told Cpl. Dickerson that, due to that fear, they transported Plaintiff's mother to the hospital.  (*Id*.)

After interviewing the EMTs, Cpl. Dickerson went to Wilmington Hospital.  (Compl. ¶¶ 37, 43; D.I. 11, A-3, A-15.)  A man matching the EMTs' description of Plaintiff was in Plaintiff's mother's hospital room.  (*Id*. (both sources))  After confirming Plaintiff's identity, Dickerson arrested him.  (Compl. ¶ 44; D.I. 11, A-2, A-15, A-16.)  The next day, Cpl. Dickerson swore out a probable cause affidavit that was signed by a Delaware judicial officer.  (D.I. 11, A-2–A-5.)  Plaintiff was charged with one count of possession of a firearm during commission of a felony, 11 *Del. C.* § 1447A, and three counts of aggravated menacing, 11 *Del. C.* § 602(b).  (Compl. ¶¶ 45, 46; D.I. 11, A-5.)  A month later, Plaintiff had a probable cause hearing at which a judge found probable cause.  (D.I. 11, A-51.)  On January 20, 2023, the Delaware Department of Justice dismissed the charges.

On June 8, 2023, Plaintiff filed his Complaint in this case.  (D.I. 1.)  Count I is a claim under 42 U.S.C. § 1983 against Cpl. Dickerson and the City of Wilmington for "malicious prosecution," and Count III is a § 1983 claim against Cpl. Dickerson and the City for "false arrest."  Count VI is styled as a "*Monell* Claim" against the City.  The other counts allege state law claims

3

against Cpl. Dickerson, the City, each of the EMTs, St. Francis Hospital, and St. Francis Hospital Transport Company. All of the Defendants moved to dismiss the Complaint for failure to state a claim. (D.I. 9 (Cpl. Dickerson and the City); D.I. 12 (the EMTs, the hospital, and the transport company).)

Defendant Cpl. Dickerson contends that the § 1983 claims against him should be dismissed because they fail to state a constitutional violation, and he is therefore entitled to qualified immunity. "At the motion to dismiss stage, a law enforcement officer is shielded by qualified immunity if (1) the facts alleged show the officer's conduct did not violate a constitutional right, or (2) the right violated was not clearly established in light of the specific context of the case." *Taylor v. Rosa*, 856 F. App'x 376, 378 (3d Cir. 2021) (citing *Reedy v. Evanson*, 615 F.3d 197, 223–24 (3d Cir. 2010)).

Both of the Complaint's § 1983 claims against Cpl. Dickerson—malicious prosecution (Count I) and false arrest (Count III)—include as a required element that the plaintiff was arrested without probable cause.[3] So Cpl. Dickerson is entitled to qualified immunity if the Complaint fails

---

[3] *See McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009) (elements of a § 1983 malicious prosecution claim are "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding"); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."); *see also Kessler v. Borough of Frackville*, No. 17-2231, 2018 WL 2113648, at *4 (M.D. Pa. May 8, 2018) ("The probable cause analysis is the same for § 1983 claims for false arrest and malicious prosecution.").

The Complaint states that Defendants' alleged actions "violated the Plaintiff's rights protected by the First, Fourth, and Fourteenth Amendments to the United States [sic]." (Compl. ¶¶ 62, 71.) But Plaintiff's brief only argues that the Complaint states Fourth Amendment claims.

to allege facts plausibly suggesting that Dickerson lacked probable cause at the time he arrested Plaintiff.

The Complaint alleges, and the Court accepts as true, that the EMTs told Cpl. Dickerson that Plaintiff demanded they take his mother to the hospital while displaying a handgun in his waistband, and that Plaintiff's conduct made them fearful for their own safety. Plaintiff does not argue that the conduct alleged by the EMTs does not amount to aggravated menacing.[4]

Instead, Plaintiff argues that Cpl. Dickerson lacked probable cause because he knew the EMTs were lying and/or he should have done more to corroborate their allegations. (D.I. 1 ¶¶ 33–36, 39–42.) The problem for Plaintiff is that the Complaint fails to allege any facts making it plausible that Cpl. Dickerson knew (or even should have known) that the EMTs were lying. And Plaintiff's argument that further investigation was necessary is contrary to the law. "Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). "The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005). "Statements of a victim witness are typically sufficient to establish probable cause in the absence of independent exculpatory evidence or substantial evidence of a witnesses' own unreliability that outweighs the probable cause that otherwise exists." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477–78 (3d Cir.

---

[4] "A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury." 11 *Del. C.* § 602(b).

5

2016) (cleaned up and citations omitted). Here, Plaintiff's own Complaint alleges that all three EMTs were "consistent in their statements" to Cpl. Dickerson. (Compl. ¶ 42.) The Complaint does not allege that Cpl. Dickerson was aware of evidence of the EMTs' unreliability that would have outweighed the probable cause that otherwise existed.

To the extent Plaintiff argues that it is never appropriate to resolve the issue of probable cause at the motion to dismiss stage, the Court disagrees. Although the existence of probable cause in a § 1983 action is typically a question of fact, it can be resolved at the motion to dismiss stage if the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate the existence of probable cause. *See, e.g., Taylor v. Rosa*, 856 F. App'x 376, 378–79 (3d Cir. 2021) (concluding, at the motion to dismiss stage, that the arrest at issue was supported by probable cause); *Jecrois v. Sojak*, 736 F. App'x 343, 346–348 (3d Cir. 2018) (same); *Voorhis v. Ginkel*, No. 23-90, 2024 WL 4267311, at *3–7 (W.D. Pa. Sept. 23, 2024) (same); *White v. Pennsylvania*, No. 22-1692, 2024 WL 915558, at *1 (M.D. Pa. Mar. 4, 2024) (same). In this case, Plaintiff's own Complaint alleges that three EMTs told Cpl. Dickerson that Plaintiff committed acts that amounted to aggravated menacing, and the Complaint does not allege any facts plausibly suggesting Cpl. Dickerson had any reason not to believe them. Under these circumstances, dismissal of the claims against Cpl. Dickerson is appropriate.

Counts I and III also name the City. However, because "there was no constitutional violation for which [Cpl. Dickerson is] liable under § 1983, the City cannot be held vicariously liable." *Napier v. City of New Castle*, 407 F. App'x 578, 584 (3d Cir. 2010) (citing *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989)). Count IV purports to assert a

*Monell* claim,[5] but the allegations of a policy or custom of constitutional violations are wholly conclusory. (Compl. ¶¶ 88–104.) As there are no facts that plausibly suggest a policy or custom of constitutional violations by the City, the § 1983 claims against it will be dismissed.

The remaining claims are all state law claims. Section 1367(a) of Title 28 permits the Court to exercise jurisdiction over state-law claims related to asserted claims over which the court has original jurisdiction; however, under § 1367(c)(3), the Court "may decline to exercise supplemental jurisdiction" over the state law claims if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). And "[i]t '*must* decline' to exercise supplemental jurisdiction in such circumstances 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original)). There is no affirmative justification for assuming jurisdiction here.

Plaintiff is granted leave to amend the Complaint to remedy the above-identified deficiencies within 7 days.

Accordingly, IT IS HEREBY ORDERED THAT:

1.  Defendants City of Wilmington and Corporal Jeffrey Dickerson's Motion to Dismiss Plaintiff's Complaint (D.I. 9) is GRANTED.

2.  The St. Francis Defendants' Motion to Dismiss Plaintiff's Complaint (D.I. 12) is GRANTED.

---

[5] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (holding that a municipality may be held liable under 42 U.S.C. § 1983 where a constitutional injury is caused by a municipal policy or custom).

3.  The Complaint (D.I. 1) is DISMISSED without prejudice.  Plaintiff is granted leave to amend within 7 days.

Dated: November 1, 2024

_____
The Honorable Jennifer L. Hall
UNITED STATES DISTRICT JUDGE

8